## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## LOUISVILLE DIVISION
## CRIMINAL ACTION NO. 3:15-CR-00049-TBR

UNITED STATES OF AMERICA,                                               Plaintiff,

v.

KENYATTA TYRONE JAMES,                                        Defendant.

### MEMORANDUM OPINION AND ORDER

A single-count indictment charges Kenyatta Tyrone James with being a felon-in-possession of a firearm. Rather than proceed with the benefit of counsel, James has decided to mount his own defense. Over the course of the past three months, he has done just that: He has commenced an energetic motion practice generating, for purposes of this opinion, eight motions on subjects ranging from dismissing the indictment against him to obtaining various items of discovery. The Court has carefully and thoughtfully considered the litany of motions before it. For the reasons explained more fully below, the Court **DENIES** all but one.

### I.

On May 20, 2015, Kenyatta Tyrone James was indicted on one charge of violating the federal felon-in-possession-of-a-firearm statute, 18 U.S.C. § 922(g)(1). The only count of the indictment reads:

> On or about May 8, 2015, in the Western District of Kentucky, Jefferson County, Kentucky, the defendant, **KENYATTA TYRONE JAMES**, being a person who had been convicted in a court of a crime punishable by imprisonment for a term exceeding one year, that is,
>
> On or about June 14, 1999, **KENYATTA TYRONE JAMES**, was convicted in the United States District Court for the Western District of Kentucky, in Case Number 3:98CR-155-C, of possession with intent to distribute a

1

>controlled substance (cocaine) and possession of a firearm by a person under Indictment for a felony offense; and
>
>On or about June 1, 2006, **KENYATTA TYRONE JAMES**, was convicted in Jefferson County Circuit Court, Louisville, Kentucky, in Case Number 05-CR-001756, of trafficking in a controlled substance (cocaine),

>knowingly possessed, in and affecting commerce, a firearm, that is, a Glock .40 caliber pistol, serial number DNX903.
>
>In violation of Title 18, United States Code, Sections 922(g)(1), 924(a)(2) and 924(e).

R. 1 at 1 (Indictment).

For some time prior to that date, James was confined at the Roederer Correctional Complex in LaGrange, Kentucky based on a state court conviction. R. 7 at 1 (Petition for Writ). After securing the indictment, the Government obtained an arrest warrant and filed a detainer for James with the Warden.[1] R. 70 at 1 (Government's Response to Third Motion to Dismiss). When the Government learned that the Warden would not honor the detainer, it petitioned for a writ of *habeas corpus ad prosequendum* on July 1, 2015.[2] R. 64 at 1 (Government's Response to Second Motion to Dismiss); *see also* R. 7. The writ issued on July 2, *see* R. 8 (Writ), and James was appointed a federal defender at his arraignment on July 28 before Magistrate Judge Lindsay, *see* R. 10 at 1 (Magistrate Judge's Order of July 29, 2015).

The following day, citing a conflict of interest, James' federal defender moved to withdraw as counsel of record. R. 9 at 1 (Motion to Withdraw). Magistrate Judge

---

[1] "A detainer is simply a notice to prison authorities that charges are pending against an inmate elsewhere, requesting the custodian to notify the sender before releasing the inmate. Filing a detainer is an informal process which does not bind the authorities to act. Generally, a penal institution will recognize a detainer lodged by any person who has authority to take an inmate into custody." *Ridgeway v. United States*, 558 F.2d 357, 360 (6th Cir. 1977) (footnote omitted).

[2] "A federal writ of habeas corpus ad prosequendum is a court order directing the production of a prisoner to stand trial in federal court." *Id.* at 361. *See generally Carbo v. United States*, 364 U.S. 611 (1961) (detailing the history of the writ in American jurisprudence).

Lindsay granted that motion, appointed new counsel for James, and held his detention hearing (which James waived) on July 30. *See* R. 11 at 1 (Magistrate Judge's Order of July 30, 2015); R. 15 at 1 (Magistrate Judge's Order of July 31, 2015).

Subsequently, the Court held a telephonic status conference with the parties on August 28. Counsel informed the Court that each side was in the process of reviewing discovery, and the Court orally scheduled a subsequent telephonic status conference for October 2. *See also* R. 20 at 1 (Order of September 3, 2015).

On August 31, however, James filed various papers (*pro se*) to dismiss the indictment against him, to waive his right to counsel, and to compel the production of grand jury materials. *See* R. 17 (First Motion to Dismiss); R. 18 (Motion to Waive Right to Counsel); R. 19 (Motion to Compel Grand Jury Materials). Meanwhile, on September 12, James (through counsel) moved to suppress the Glock .40 caliber pistol on which the Government based the felon-in-possession charge. *See* R. 23 (Motion to Suppress). Only two days later, on September 14, James (*pro se*, again) moved to compel the Government to produce a host of information. *See* R. 25 (First Motion for Discovery); R. 26 (Second Motion for Discovery); R. 27 (Third Motion for Discovery). The Government sought to strike James' *pro se* filings on September 14, R. 30 (Motion to Strike), but asked to withdraw that request on the same day, R. 31 (Motion to Withdraw Motion to Strike).

The litany of papers—some filed *pro se*, others filed through counsel—caused considerable confusion. During the telephonic status conference held on October 2, defense counsel informed the Court that James was adamant about representing himself. Accordingly, the Court scheduled a *Faretta* hearing for November 16. Out of fairness to

3

the Government, and in the interest of justice, the Court also granted the Government additional time to respond to James' various pleadings.

Adding to his energetic motion practice, on October 28, James filed a renewed motion to dismiss. *See* R. 50 (Second Motion to Dismiss). Then, on November 13, he filed a third motion to dismiss. *See* R. 63 (Third Motion to Dismiss). The Court held the *Faretta* hearing on November 16, subsequently found that James knowingly and intelligently waived his right to counsel, and scheduled an in-person further proceedings hearing for December 11. *See* R. 65 (Order of November 23, 2015). The Court later moved the in-person further proceedings to December 10. *See* R. 66 at 1 (Order of November 24, 2015).

From then on, James' extensive motion practice has continued unabated. James asked to withdraw the motion to suppress filed by his former attorney on November 30. *See* R. 69 (Motion to Withdraw Motion to Suppress). In addition, James filed papers seeking prompt disposition of his outstanding filings on December 7. *See* R. 71 (Motion for Prompt Disposition). Following the December 10 hearing, the Court granted James' request to withdraw the motion to suppress. *See* R. 74 at 1, ¶ 6 (Order of December 22, 2015). Most recently, on December 15, James asked to strike supposed "surplusage" from the indictment returned against him. *See* R. 72 (Motion to Strike Surplusage from Indictment). James' case is set for trial on February 16, 2016. R. 74 at 1, ¶ 1.

## II.

James moves to dismiss with prejudice the indictment against him. R. 17 at 1. He advances four arguments in support of his motion. None are persuasive.

**A.**

First, James points to the Speedy Trial Act of 1974, Pub. L. No. 93-619, 88 Stat. 2076 (1975) (codified as amended at 18 U.S.C. §§ 3161–3174), and says that because more than seventy days have passed since the grand jury indicted him, the indictment must be dismissed. *See* R. 17 at 1, ¶ 1; *see also* R. 17-1 at 2–5 (Memorandum in Support).[3] While James' factual premise is correct, his legal conclusion isn't. In short, contrary to James' understanding, the statutory time period has not elapsed.

**1.**

The Speedy Trial Act is not simple. To start, the seventy-day "limit for trial begins to run from the *latter* of two days: when the defendant is indicted, or when the defendant is arraigned." *United States v. Blackmon*, 874 F.2d 378, 380 (6th Cir. 1989) (emphasis added); *see also* 18 U.S.C. § 3161(c)(1) ("[T]he trial of a defendant . . . shall commence within seventy days from the filing date . . . of the information or indictment, *or* from the date the defendant has appeared before . . . the court . . ., *whichever date last occurs*." (emphasis added)). The endpoint for the calculation is the date on which the defendant last moved to dismiss on Speedy Trial Act grounds. *See United States v. Tinson*, 23 F.3d 1010, 1012 (6th Cir. 1994) ("[A] motion for dismissal is effective only for periods of time which antedate the filing of the motion." (quoting *United States v. Connor*, 926 F.2d 81, 84 (1st Cir. 1991)) (internal quotation marks omitted)); *United States v. Peterson*, 411 F. App'x 857, 862 (6th Cir. 2011); *United States v. Payton*, 257 F. App'x 879, 881 (6th Cir. 2007).

---

[3] In addition to his original motion to dismiss, James also submitted two additional filings in essence renewing or supplementing his argument on this point. *See* R. 50 at 1–2; R. 63 at 1–3. The Court addresses those papers in this discussion.

5

But even once the clock starts, the seventy-day period "is subject to numerous exclusions." *United States v. Smith*, 510 F. App'x 390, 394 (6th Cir. 2013); *see also* 18 U.S.C. § 3161(h). Some exclusions are automatic. *See Bloate v. United States*, 559 U.S. 196, 203 (2010). For example, the seventy-day clock is tolled when a party files a pretrial motion and remains tolled while the Court awaits filings from either party on that issue. *See* 18 U.S.C. § 3161(h)(1)(D); *see also United States v. Robertson*, 260 F.3d 500, 503–04 (6th Cir. 2001); *United States v. Jenkins*, 92 F.3d 430, 438–39 (6th Cir. 1996); *United States v. Moran*, 998 F.2d 1368, 1371 (6th Cir. 1993). If the motion requires a hearing, then "the entire period between the filing of the motion and the conclusion of the hearing" is excludable. *Henderson v. United States*, 476 U.S. 321, 329 (1986); *see also* 18 U.S.C. § 3161(h)(1)(D). In either situation, once the Court has received all the papers it reasonably expects, the motion is taken "under advisement," and the seventy-day clock remains tolled for no more than thirty days following. *See* 18 U.S.C. § 3161(h)(1)(H); *see also Robertson*, 260 F.3d at 504; *Jenkins*, 92 F.3d at 439; *United States v. Mentz*, 840 F.2d 315, 327 (6th Cir. 1988).

Others exclusions require the Court to make specific findings on the record. *See Bloate*, 559 U.S. at 203; *see also* 18 U.S.C. § 3161(h)(7). One such exclusion results from a continuance "granted by any judge on his own motion or at the request of the defendant or his counsel or at the request of the attorney for the Government." 18 U.S.C. § 3161(h)(7)(A). Such a continuance "must be based on a court's 'findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial.'" *United States v. Williams*, 753 F.3d 626, 634 (6th Cir. 2014) (quoting 18 U.S.C. § 3161(h)(7)(A)).

Before granting an ends-of-justice continuance, "a district court should weigh factors such as whether a miscarriage of justice could result, the complexity of the case and time needed for preparation, and the continuity of counsel." *United States v. Richardson*, 681 F.3d 736, 738 (6th Cir. 2012) (citing 18 U.S.C. § 3161(h)(7)(B)). The Court's findings must be set forth, either orally or in writing, in the record of the case. 18 U.S.C. § 3161(h)(7)(A). While the best practice is to set forth these reasons "at or near the time [the Court] grants the continuance," *Zedner v. United States*, 547 U.S. 489, 507 n.7 (2006), the Court may make the necessary findings when deciding a motion to dismiss under the Act, *see Williams*, 753 F.3d at 636; *United States v. Smith*, 510 F. App'x 390, 395 (6th Cir. 2013); *United States v. Stone*, 461 F. App'x 461, 464 (6th Cir. 2012).

**2.**

Contrary to James' repeated suggestion, no Speedy Trial Act violation has occurred. The reason is twofold: James not only starts the seventy-day clock on the wrong day, but also fails to stop it at appropriate times too. When all is said and done, only twenty-eight days count against the seventy-day clock, leaving forty-two days remaining as of November 17, 2015.

**a.**

James says that because more than seventy days have passed since the grand jury indicted him, the Speedy Trial Act has been violated. *See* R. 17-1 at 2–5. While the grand jury returned the indictment against James on May 20, and James' arraignment took place on July 28, 2015. Therefore, the seventy-day clock started running on July 28—not on May 20. *See Payton*, 257 F. App'x at 882.

**b.**

From that point forward, all but twenty-eight days are excluded under the Speedy Trial Act. James' arraignment took place on July 28, 2015, but that day is excluded. *See* 18 U.S.C. § 3161(h)(1); *see also United States v. Nabors*, 901 F.2d 1351, 1355 (6th Cir. 1990) (excluding day of arraignment); *Mentz*, 840 F.2d at 326 (same). After discovering a conflict of interest the following day, James' federal defender moved to withdraw as counsel of record. *See* R. 9 at 1. Such a motion also stops the seventy-day clock. *See* 18 U.S.C. § 3161(h)(1)(D); *see also United States v. Sobh*, 571 F.3d 600, 604 (6th Cir. 2009) (excluding day on which counsel filed motion to withdraw); *United States v. Culpepper*, 898 F.2d 65, 67 (6th Cir. 1990) (same). Magistrate Judge Lindsay granted the federal defender's motion to withdraw on July 30, R. 11 at 1, meaning that day is excluded too, *see* 18 U.S.C. § 3161(h)(1)(D); *see also Sobh*, 571 F.3d at 604 (excluding time between the filing and granting of motion to withdraw); *Culpepper*, 898 F.2d at 67 (same).[4] Therefore, July 28 to July 30 are excluded from the seventy-day calculation.

With nothing pending before the Court between July 31 and August 27, 2015, that period of time is non-excludable. *See Jenkins*, 92 F.3d at 440 (holding time non-excludable where "there were no motions requiring a hearing pending before the court and no other pretrial motion had been pending before the court for less than thirty days"); *Blackmon*, 874 F.2d at 380 (same). Those twenty-eight days count against the seventy-day clock, leaving forty-two days remaining.

Next comes the telephonic status conference held on August 28. During the colloquy which ensued, James' attorney requested additional time to "review discovery,

---

[4] Magistrate Judge Lindsay also held James' detention hearing on July 30, 2015. *See* R. 10 at 1; R. 15 at 1. That, too, would toll the seventy-day period. *See* 18 U.S.C. 3161(h)(1); *see also Nabors*, 901 F.2d at 1355 (excluding day of detention hearing).

8

confer with [James] and the United States Attorney[,] and to consider any possible resolution." R. 20 at 1. The Court found that denying a continuance might not only "result in a miscarriage of justice," 18 U.S.C. § 3161(h)(7)(B)(i), but also would deny James' counsel the time reasonably necessary to prepare for trial, despite his due diligence, *id.* § 3161(h)(7)(B)(iv). Both James and the Government also agreed that a continuance was necessary. R. 20 at 1 ("The parties agreed this time should be excluded from the Speedy Trial Act."). Accordingly, the Court concluded that the ends of justice served by granting a continuance outweighed the public and James' interests in a speedy trial.[5] *Id.* (citing 18 U.S.C. § 3161(h)(7)(A)).

The Court sufficiently articulated its reasons for granting an ends-of-justice continuance under 18 U.S.C. § 3161(h)(7). *See Williams*, 753 F.3d at 635 (affirming ends-of-justice continuance to allow counsel "to 'review evidence, meet with the defendant, and possibl[y] find a resolution short of trial'") (alteration in original) (emphasis omitted)); *see also Stone*, 461 F. App'x at 465–66 (affirming ends-of-justice continuance under § 3161(h)(7)(B)(ii) and (iv)). Consistent with the Court's order, the seventy-day clock again stopped between August 28 and October 2, 2015.

But even without a continuance, only two non-excludable days would be added to the tally. The reason is James' voluminous motion practice.[6] Take James' motion to waive his right to counsel and proceed *pro se*. *See* R. 18. To start, the seventy-day clock

---

[5] The Court is aware, of course, that time may not be excluded under the Speedy Trial Act solely "on the grounds of mere consent or waiver." *Zedner*, 547 U.S. at 500. But such consent is at least relevant to determine if "the ends of justice served by the granting of such a continuance outweigh the best interests of . . . *the defendant* in a speedy trial." 18 U.S.C. § 3161(h)(7)(A) (emphasis added).

[6] Imaginably, James' litany of filings results in a considerable period of excludable time too. But it is not necessary to detail cumulative, excludable days resulting from James' almost half-dozen motions and other related proceedings.

9

stopped when James filed that motion on August 31. *See* 18 U.S.C. § 3161(h)(1)(D). But more important is when the clock resumed. In his papers, James expressly requested the Court to conduct a *Faretta* hearing. R. 18 at 2. The Court scheduled that hearing for November 16, *see* R. 39 at 1 (Order of October 7, 2015), and, due to the overwhelming number of James' filings, allowed the Government up to November 10 to file a response, *see* R. 54 at 1 (Order of November 3, 2015); *see also* R. 56 (Response to Motion to Waive Counsel). The Court conducted a *Faretta* hearing on November 16 and, at its conclusion, took James' motion under submission. On November 20, the Court granted James' motion. *See* R. 65 at 2.[7] Under the plain language of § 3161(h)(1)(D) and (H), then, the period of time between and including August 31 and November 20, 2015 must also be excluded from the seventy-day period. *See United States v. Treadwell*, 11 F. App'x 502, 506 (6th Cir. 2001) (excluding period of time between motion to remove counsel and to proceed *pro se* and conclusion of hearing and resulting order).

In sum, because twenty-eight days falls short of the seventy-day period allowed under the Act, James' argument falls short too.

**B.**

James also appears to suggest (on the same grounds as advanced in his Speedy Trial Act objection) that the delay between his indictment and trial violates the Speedy Trial Clause of the Sixth Amendment. *See* R. 17-1 at 2–6. It does not.

In *Barker v. Wingo*, 407 U.S. 514 (1972), the Supreme Court identified four factors that district courts must take into account when determining if the Speedy Trial Clause of the Sixth Amendment has been violated. "These factors are (1) whether the

---

[7] While not uploaded to the Court's electronic docket until November 23, the pertinent date for Speedy Trial Act purposes is the date of disposition, *i.e.*, the date on which the Court signed the order in question. *See United States v. Montgomery*, 395 F. App'x 177, 181 n.3 (6th Cir. 2010).

delay was uncommonly long; (2) the reason for the delay; (3) whether the defendant asserted his right to a speedy trial; and (4) whether prejudice resulted to the defendant." *United States v. Schreane*, 331 F.3d 548, 553 (6th Cir. 2003) (citing *Barker*, 407 U.S. at 530); *see also Doggett v. United States*, 505 U.S. 647, 651 (1992) (restating the four-factor test in *Barker*). The first factor is a threshold issue, "and if the delay is not uncommonly long, judicial examination ceases." *United States v. Robinson*, 455 F.3d 602, 607 (6th Cir. 2006) (citing *Schreane*, 331 F.3d at 553). Generally speaking, in this Circuit, "a delay is presumptively prejudicial when it approaches one year." *United States v. Gardner*, 488 F.3d 700, 719 (6th Cir. 2007) (citing *Schreane*, 331 F.3d at 553); *see also United States v. Ferreira*, 665 F.3d 701, 705 (6th Cir. 2011); *Maples v. Stegall*, 427 F.3d 1020, 1025–26 (6th Cir. 2005).

In this case, the Government indicted James on May 20, 2015, and his case is set for trial on February 16, 2016. The length of time is not "uncommonly long," especially in light of James' request to represent himself and the numerous motions that he has filed. Because the delay between the indictment and trial does not cross the threshold dividing ordinary from presumptively prejudicial delay, James' right to a speedy trial has not been violated. *See, e.g.*, *Gardner*, 488 F.3d at 719 (holding nine-month delay not uncommonly long where case involved multiple pretrial motions and declining to undertake *Barker* analysis); *United States v. Cope*, 312 F.3d 757, 777–78 (6th Cir. 2002) (holding ten-month delay insufficient to trigger *Barker* analysis); *United States v. Crawford*, 489 F. App'x 866, 868 (6th Cir. 2012) (holding eight-month delay insufficient to trigger *Barker* analysis); *Wilcher v. Rose*, 85 F.3d 630, 1996 WL 262951, at *1 (6th Cir. 1996)

11

(unpublished table disposition) (finding ten-and-one-half-month delay insufficient to warrant *Barker* analysis in light of significant number of defense motions).

### C.

In addition, James moves under Federal Rule of Criminal Procedure 12(b)(3)(B)(v) to dismiss the indictment against him for failing to state an offense. *See* R. 17 at 1, ¶ 2. As discussed earlier, the Government indicted James under 18 U.S.C. § 922(g)(1) for being a felon in possession of a firearm. R. 1 at 1. James does not appear to contest the sufficiency of the indictment on that (the one and only) count. *See* R. 17-1 at 6–7. Instead, James takes issue with a reference in the indictment to the Armed Career Criminal Act of 1984, Pub. L. No. 98-473, tit. II, ch. XVIII, § 1802, 98 Stat. 1937, 2185, *repealed by* Firearms Owners' Protection Act, Pub. L. No. 99-308, § 104, 100 Stat. 449, 456–59 (1988) (current version at 18 U.S.C. § 924(e)). *See id.* at 6. According to James, the "alleged act committed by defendant and his criminal history fail[] to satisfy the elements" of 18 U.S.C. § 924(e). *Id.* In other words, James asserts that the indictment does not establish his eligibility, if convicted, for an enhanced sentence under the Armed Career Criminal Act. *See id.* ("The *penalty imposed* for defendant having allegedly been in violation of section 922(g), is inapplicable and cannot legally be applied to the defendant in this matter." (emphasis added)).

### 1.

An indictment must satisfy several requirements originating, collectively, from "from the Fifth Amendment's Due Process, Double Jeopardy, and Grand Jury Clauses and the Sixth Amendment's Notice Clause." *United States v. Cor-Bon Custom Bullet Co.*, 287 F.3d 576, 580 (6th Cir. 2002). Federal Rule of Criminal Procedure 7(c)(1)

generally requires an indictment to contain "a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). In other words, an indictment "must assert facts which in law constitute an offense; and which, if proved, would establish prima facie the defendant's commission of that crime." *United States v. Landham*, 251 F.3d 1072, 1079 (6th Cir. 2001) (quoting *United States v. Superior Growers Supply, Inc.*, 982 F.2d 173, 177 (6th Cir. 1992)) (internal quotation marks omitted). The language of the indictment must "ensure that [the] accused is reasonably informed of the charge made against him so that he can prepare a defense." *Williams v. Haviland*, 467 F.3d 527, 535 (6th Cir. 2006) (quoting *Cor-Bon Custom*, 287 F.3d at 580) (internal quotation marks omitted). In the usual case, an indictment that "states the offense using the words of the statute itself" will be sufficient. *Landham*, 251 F.3d at 1079 (citing *Hamling v. United States*, 418 U.S. 87, 117 (1974); *United States v. Monus*, 128 F.3d 376, 388 (6th Cir. 1997)). Should an indictment fall short of these mandates, a defendant may move to dismiss the indictment under Federal Rule of Criminal Procedure 12(b)(3)(B). When resolving a motion to dismiss, the Court must assume the indictment's factual allegations to be true. *See Costello v. United States*, 350 U.S. 359, 363 (1956).

## 2.

At this stage of the proceeding against him, James' argument misses the mark. The reason is simple: 18 U.S.C. § 924(e) is not "a separate offense that the government must plead in the indictment." *United States v. McMurray*, 653 F.3d 367, 370 (6th Cir. 2011); *see also United States v. Keglar*, 535 F. App'x 494, 495 (6th Cir.), *cert. denied*, 134 S. Ct. 668 (2013) (same); *accord United States v. Dunn*, 946 F.2d 615, 619 (9th Cir.

13

1991) ("[T]he three prior violent felonies required as a predicate for sentence enhancement need not be included in the indictment and proved at trial." (citing *United States v. West*, 826 F.2d 909, 911 (9th Cir. 1987)))). Instead, it is a "sentence enhancement," *McMurray*, 653 F.3d at 371 (citing *Custis v. United States*, 511 U.S. 485, 490 (1994); *Taylor v. United States*, 495 U.S. 575, 577 (1990)), and becomes relevant only if James is convicted of the actual offense charged in the indictment—being a felon in possession of a firearm. Only then will the Court need to determine if there are "facts that trigger a mandatory minimum sentence." *United States v. Price*, 516 F.3d 597, 605 (7th Cir. 2008). Any argument as to James' ineligibility (or eligibility) for an *enhanced sentence* under 18 U.S.C. § 924(e) is not the proper subject of a motion to dismiss because it is not a separate *offense* necessary to include in the indictment.

### D.

James also argues that the indictment violates the Double Jeopardy Clause of the Fifth Amendment because of a rote citation to not only 18 U.S.C. § 924(a)(2), but also to 18 U.S.C. § 924(e). R. 17 at 1, ¶ 3; *see also* R. 17-1 at 8–9; R. 68 at 5–6. As James sees it, the inclusion of § 924(a)(2) and (e) means the indictment "contains dual penalties that [call for] cumulative punishment . . . for a single offense charged." R. 17-1 at 8. To be sure, James is correct on one point: The Double Jeopardy Clause protects (with some exceptions) "against multiple punishments for the same offense." *United States v. Mack*, 938 F.2d 678, 679 (6th Cir. 1991) (citing *Justices of Bos. Mun. Court v. Lydon*, 466 U.S. 294 (1984)). But the remainder of James' theory rests on a misapprehension about how the statutory mechanics involved in his case work.

According to 18 U.S.C. § 924(a)(2), a prior felon convicted of possessing a firearm is subject to a maximum prison term of ten years. However, if that person is not only convicted, but also has three prior convictions for violent felonies or serious drug crimes, then he is subject to an enhancement under 18 U.S.C. § 924(e)(1) in the form of a mandatory minimum sentence of fifteen years. Each subsection describes one of two *possible* sentences upon conviction for violating 18 U.S.C. § 922(g). But only one *actual* sentence (involving only one subsection) can be imposed.

In a case involving a single-count indictment, such as this one, it is not possible to read the statute otherwise. A person cannot be subject to a *maximum* sentence of ten years, *see* 18 U.S.C. § 924(a)(2), while also being subject to a *minimum* sentence of fifteen years, *see* 18 U.S.C. § 924(e)(1), for the same offense. Multiple punishments will not be imposed for a single offense, so the indictment does not violate the Double Jeopardy Clause. *Cf. United States v. DiFrancesco*, 449 U.S. 117, 137 (1980) ("The Double Jeopardy Clause does not provide the defendant with the right to know at any specific moment in time what the exact limit of his punishment will turn out to be.").

### III.

James has filed various discovery-related motions too. While three lack merit, the fourth is persuasive—but only in part.

### A.

James asks this Court to order the Government to disclose information related to the grand jury proceedings against him, including all "recordings, the reporter[']s notes, any transcript prepared from those notes, jurors['] qualifications, income, residency, names, age, sex, race, criminal history, and jury service record." R. 19 at 1, ¶ 2. An

15

examination of those materials will reveal otherwise qualified African American jurors were excluded from the "grand jurors select[ed], summon[ed], and lawfully drawn in this matter"—at least so James speculates. *Id.* at 1, ¶ 1. The Court disagrees.

"There is a strong policy in favor of maintaining the secrecy of grand jury proceedings." *United States v. Azad*, 809 F.2d 291, 294 (6th Cir. 1986) (citing *United States v. Short*, 671 F.2d 178, 184 (6th Cir. 1982)). Accordingly, disclosure of such materials "is proper only on a showing of 'compelling necessity' and 'particularized need.'" *Id.* (citing *Short*, 671 F.2d at 184; *United States v. Lisinski*, 728 F.2d 887, 893 (7th Cir. 1984)). James' unsubstantiated and speculative assertions of impropriety are far short of demonstrating either. *Cf. Thomas v. United States*, 597 F.2d 656, 658 (8th Cir. 1979) (holding statement that materials were needed to "prove all of [defendant's] prior and future allegations in a court of law in reference to 'due process' and 'equal protection of law'" showed "no 'particularized need'"); *United States v. Loc Tien Nguyen*, 314 F. Supp. 2d 612, 617 (E.D. Va. 2004) (refusing to allow defendant "to engage in a fishing expedition [of grand jury materials] to see if any evidence exists to support a potential motion to dismiss the indictment"). Accordingly, the veil of secrecy shrouding the grand jury proceedings will remain intact. *See also* R. 74 at 1, ¶ 5.

### B.

Next, James moves the Court to require the Government to comply with its discovery obligations under Federal Rule of Criminal Procedure 16. *See* R. 25 at 2. The Government says it has already disclosed the requested information, R. 58 at 1, and the record supports that statement, *see generally* R. 25-1. Consequently, James' motion is

moot. *See United States v. Jackson*, No. 5:14-CR-00012-TBR, 2015 WL 3970701, at \*2 (W.D. Ky. June 30, 2015).

### C.

Moreover, James asks the Court to direct the Government to disclose any "exculpatory materials pursuant to the mandate of *Brady*," R. 26 at 1, and identifies various categories of information he alleges to be discoverable, *see id.* at 1–2, ¶¶ 1–5. The Government acknowledges its obligation to provide James with exculpatory and impeaching evidence, as is required under *Brady v. Maryland*, 373 U.S. 83 (1963), *Giglio v. United States*, 405 U.S. 150 (1972), and *United States v. Presser*, 844 F.2d 1275 (6th Cir. 1988), in a timely fashion to allow for its effective use at trial. R. 59 at 1. The Court entered an order to the same effect on December 22. R. 74 at 1, ¶¶ 3–4. Therefore, James' request is moot.[8] *See Jackson*, 2015 WL 3970701, at \*2.

### D.

James also seeks an order compelling the Government to give notice, pursuant to Federal Rule of Evidence 404(b), of its intention to use evidence of his other crimes, wrongs, or bad acts at trial. R. 27 at 1–2. Specifically, James asks the Government to

---

[8] While his motion does not reference the Jencks Act, Pub. L. No. 85-269, 71 Stat. 595 (1957) (codified as amended at 18 U.S.C. § 3500), the Government does object, on Jencks Act grounds, to James' request for the names and addresses of any person interviewed but not expected to testify, as well as the notes from such interviews, if any. R. 59 at 1; *see also* R. 26 at 1, ¶¶ 1–2. The Jencks Act says "no statement or report . . . made by a Government witness or prospective Government witness . . . shall be the subject of subpoena, discovery, or inspection until said witness has testified on direct examination." 18 U.S.C. § 3500(a). Hence, the Government's objection is well-founded. "The statements and accompanying documents of witnesses who did not testify are similarly not discoverable under the Jencks Act." *Blackfoot Livestock Comm'n Co. v. Dep't of Agric., Packers & Stockyards Admin.*, 810 F.2d 916, 923 (9th Cir. 1987) (citing *United States v. Disston*, 612 F.2d 1035, 1038 (7th Cir. 1980)); *see also United States v. Carter*, 621 F.2d 238, 240 (6th Cir. 1980) ("[T]he United States is generally under no duty to provide the statement of a government witness until that witness has testified on direct examination in the case." (citing 18 U.S.C. § 3500)); *cf. United States v. Perkins*, 994 F.2d 1184, 1190 (6th Cir. 1993) ("Ordinarily, a defendant is not entitled to a list of the names and addresses of the government's witnesses." (citing Fed. R. Crim. P. 16)).

identify any witnesses who will testify as to any Rule 404(b) matter. *Id.* at 1. The Government does not contest its general obligation to provide appropriate notice, but it does take issue with providing James with a witness list. *See* R. 60 at 1.

Rule 404(b) requires that, upon the defendant's request, the prosecution "provide reasonable notice of the general nature" of evidence of crimes, wrongs, or other acts it intends to offer at trial. Fed. R. Evid. 404(b)(2)(A); *see also United States v. Gonzalez*, 501 F.3d 630, 637 (6th Cir. 2007); *United States v. Barnes*, 49 F.3d 1144, 1147–49 (6th Cir. 1995). The notice requirement "is intended to reduce surprise and promote early resolution on the issue of admissibility" of Rule 404(b) evidence. Fed. R. Evid. 404 advisory committee's note to 1991 amendment. "[N]o specific form of notice is required," only generalized notice designed to "apprise the defense of the general nature of the extrinsic acts." *Id.*; *see also Gonzalez*, 501 F.3d at 637 (discussing that government must merely provide "such notice in a reasonable form and manner").

Twenty-one days will afford James adequate opportunity either to challenge the admissibility of such evidence before trial or to prepare for its eventual use at trial. *See* R. 74 at 1, ¶ 7. But the required notice is not meant to "require the prosecution to disclose directly or indirectly the names and addresses of its witnesses." Fed. R. Evid. 404 advisory committee's note to 1991 amendment; *cf. United States v. Perkins*, 994 F.2d 1184, 1190 (6th Cir. 1993) ("Ordinarily, a defendant is not entitled to a list of the names and addresses of the government's witnesses." (citing Fed. R. Crim. P. 16)). Therefore, the Government need not specify its witnesses. However, it must otherwise comply with its obligations under Rule 404(b) no later than twenty-one days prior to trial.

## IV.

For the aforementioned reasons, and being otherwise sufficiently advised, **IT IS HEREBY ORDERED**:

1. That Defendant Kenyatta Tyrone James' Motion to Dismiss Indictment Pursuant to Fed. R. Crim. P. Rule 12 (R. 17) is **DENIED**;

2. That Defendant Kenyatta Tyrone James' Motion for Disclosure of Jury-Matters Pursuant to Fed. R. Crim. P. Rule 6 (R. 19) is **DENIED**;

3. That Defendant Kenyatta Tyrone James' Motion for Discovery (R. 25) is **DENIED AS MOOT**;

4. That Defendant Kenyatta Tyrone James' Motion for Production of Favorable Evidence (R. 26) is **DENIED AS MOOT**;

5. That Defendant Kenyatta Tyrone James' Motion to Require the United States to Provide Notice of Intention to Use Other Crimes, Wrongs, or Acts as Evidence (R. 27) is **GRANTED IN PART** and **DENIED IN PART**;

6. That the Government's Motion to Strike Motion to Strike Defendant James's Pro Se Motions and Motion for an Extension of Time to Respond to Defendant James's Pro Se Motions (R. 31) is **GRANTED IN PART**. The Clerk of the Court is **DIRECTED TO STRIKE** the Government's Motion to Strike Defendant James's Pro Se Motions (R. 30) from the Court's docket;

7. That Defendant Kenyatta Tyrone James' Motion for Dismissal (R. 50) is **DENIED**;

8. That Defendant Kenyatta Tyrone James' Motion in Traverse to Government's Request for Extension of Time (R. 63) is **DENIED**; and,

9. That Defendant Kenyatta Tyrone James' Motion in Request for Disposition Pursuant to Fed. R. Crim. P. 12(d) (R. 71) is **DENIED AS MOOT**.

**IT IS SO ORDERED.**

Date:

cc: Counsel of Record
Defendant, *pro se*
Stand-By Counsel

20