UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CRIMINAL ACTION NO. 3:15-CR-00049-TBR

UNITED STATES OF AMERICA                                              PLAINTIFF

v.

KENYATTA TYRONE JAMES                                               DEFENDANT

## Memorandum Opinion and Order

This case is set for trial on March 27, 2017.  In anticipation of his trial, Defendant Kenyatta James, proceeding *pro se*, filed another round of pretrial motions.   The Court will discuss each in turn.[1]

### I. Motions in Limine to Exclude Evidence

A. Federal Rule of Evidence 103

James filed three motions seeking to exclude certain items of evidence in his upcoming trial.  First, James contends that the Court erred by admitting the government's documentary and physical evidence during his first suppression hearing because the United States failed to tender an exhibit list.   [DN 183 at 1-2.] James argues that the admission of that same evidence at trial would therefore violate Federal Rule of Evidence 103(a) and James' due process rights.   [*Id.* at 2.]

James' motion is based upon a misinterpretation of the Court's prior Order and a misunderstanding of Rule 103.   This Court has scheduled and rescheduled James' jury trial on multiple occasions, primarily due to James' extensive motion practice in this matter.   The Order to which James refers in his motion to exclude

---

[1] The Court has previously summarized the basic facts of James' case on multiple prior occasions. *See* [DN 77; DN 84; DN 128; DN 142; DN 177.]

evidence, [DN 74], is a pretrial scheduling order entered by the Court on December 22, 2015.    At that time, James' trial was set to begin February 16, 2016.    Pursuant to the Court's December 22 Order, the United States was to produce a list of its proposed exhibits fourteen days prior to the beginning of James' trial.    [*Id.* at 1.] The December 22 Order did not, as James suggests, require the government to provide an exhibit and witness list fourteen days prior to James' October 17, 2016 suppression hearing.    Therefore, James is incorrect in saying that the Court "erroneously admitted" the government's testimony and exhibits during his suppression hearing based upon a lack of prior notice.    [DN 183 at 1.]    The Court also notes that the United States has timely provided an exhibit list in anticipation of James' March 27, 2017 trial date.    *See* [DN 213.]

Rule 103 does not provide James with any relief, either.    The subsection of that rule upon which James relies states that "[a] party may claim error in a ruling to admit or exclude evidence only if the error affects a substantial right of the party and . . . a party, on the record[,] timely objects or moves to strike."    Fed. R. Evid. 103(a).    As the Sixth Circuit has noted, Rule 103(a) "is intended to allow the trial court to fix errors in its decision to admit or exclude evidence on the spot, thus preventing errors that could easily be alleviated without recourse to the appellate courts."    *United States v. Kelly*, 204 F.3d 652, 655 (6th Cir. 2000) (citation omitted). The rule does not provide district courts grounds upon which to decide the substantive admissibility of evidence.    Rather, Rule 103(a) is directed at the

preservation of error for appellate review. Accordingly, James' first motion in limine [DN 183] must be DENIED.

## B. Misconduct

Second, James argues that a substantial amount of the United States' evidence should be excluded based upon alleged prosecutorial and police misconduct. *See* [DN 185.] Citing a litany of evidentiary rules, James claims that the government has fabricated the testimony of Detective Aaron Browning and Crime Scene Unit (CSU) technician Dona Stephenson, as well as the chain of custody documentation for the Glock .40 caliber firearm, serial number DNX903, which James is alleged to have possessed. As explained below, James' arguments go to the weight of the contested evidence, not its admissibility.

James first contends that the government, through Hon. Randy Ream, "coerced Det. Browning into <u>perjuring</u> [sic] <u>himself</u>." [*Id.* at 2 (emphasis in original).] This assertion stems from Browning's testimony during James' first suppression hearing. There, Browning stated under oath that he initially recorded the serial number of James' weapon as "DNX930," but Ream later informed Browning that he had inadvertently transposed the last two digits. [DN 159 at 19-20.] Based upon Browning's admission, James argues "that if Det. Browning was not <u>coerced</u> into testifying that the serial numbers . . . [were] erroneously transposed by him, Det. Browning would have surely attested at the suppression hearing that he allegedly arrest [sic] James in possession of [a] Glock 23 .40 caliber

handgun bearing serial number DNX930."   [DN 185 at 2 (internal quotation marks omitted) (emphasis in original).]

     As James correctly points out, the prosecution may not knowingly use perjured testimony to obtain a conviction.   *Mooney v. Holohan*, 294 U.S. 103, 112 (1935).   Further, Rule 403 allows the trial court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice." Fed. R. Evid. 403.   Neither situation is present in James' case.   James presents no evidence suggesting that the United States and its attorneys compelled Det. Browning by force or threat to testify that he swapped the digits, the traditional definition of coercion.   *Coerce*, Black's Law Dictionary (10th ed. 2014).   Similarly, James makes no showing that Browning's testimony regarding the serial number was "deliberately . . . false or misleading."   *Perjury*, Black's Law Dictionary (10th ed. 2014).   At trial, James is free to point out that Browning did not realize he had mistakenly recorded the serial number until he was told so by Hon. Randy Ream. But the Court fails to see how introduction of this fact will unfairly prejudice the jury against James or will violate any of the other evidentiary rules James perfunctorily cites.

     Next, James objects to the testimony of CSU technician Dona Stephenson. His argument in this regard is somewhat difficult to discern, but broadly speaking, James believes that Stephenson logged into evidence a firearm that was not actually recovered from James' person by Browning.   [DN 185 at 4-5.]   Rather, he alleges that the chain of custody for the DNX903 handgun shows that Stephenson

obtained the weapon from the LMPD property room, not Browning.   [DN 206 at 3.]
In response, the United States explains that James' argument is based upon a
misinterpretation of LMPD's chain of custody documentation.   [DN 202 at 2-3.]

James cites only one case in support of his motion to exclude Stephenson's
testimony, *Drake v. Portuondo*, 553 F.3d 230 (2d Cir. 2009).   In *Drake*, the Second
Circuit granted the defendant's habeas petition after it concluded that the
prosecution knowingly elicited false testimony from an expert witness.   *Id.* at 247.
But *Drake* is procedurally and factually distinguishable.   During James'
suppression hearing, the Court found Stephenson's testimony credible and her
explanations of the chain of custody documentation plausible.   Since that time,
James has presented no evidence causing this Court to call that testimony into
question.   Again, James is free to raise these issues before the jury, but the Court
sees no reason to wholly exclude Stephenson as a witness at trial.

For many of these same reasons, the Court will not exclude the DNX903
handgun or the prosecution's documentary evidence.   The Court previously denied
James' motion to exclude the firearm.   *See* [*id.* at 22-25.]   In turn, that prior
motion was based upon arguments that are substantively identical to those raised
in James' instant motion.   James presents the Court with no reason to second-
guess its earlier ruling.

James objects to the government's documentary evidence upon the basis of
hearsay and unfair prejudice.   *See* [DN 185 at 5-9.]   The documents to which
James objects are the tow slip for James' vehicle and the LMPD chain of custody

documentation.   In its tendered exhibit list, the United States does not include the tow slip as a potential exhibit.   [DN 213.]   As to the tow slip, then, James' motion is moot.   As to the chain of custody, "police reports are hearsay and normally not admissible, but . . . they may be admitted for a limited, non-hearsay purpose." *United States v. Justice*, No. 11-51-GFVT, 2013 WL 880080, at *4 (E.D. Ky. Mar. 8, 2013) (citing *United States v. Graham*, 391 F.2d 439, 447 (6th Cir. 1968)).   Here, the Court can conceive of any number of other purposes for which the United States might use these documents, including (but not limited to) the purpose of rebutting James' repeated accusations that the government planted and fabricated the evidence against him.   The Court will therefore defer any ruling upon the admissibility of the chain of custody documents and their potential for unfair prejudice until it hears testimony at trial.   Of course, James is free to renew his objections if he feels that the United States has not shown that the documents fall under an exception or exclusion from the hearsay rule.

For these reasons, James' motion in limine to exclude testimony and exhibits [DN 185] is DENIED in its entirety.

## C. Character Evidence

Finally, James moves under Rule 404(b) to exclude evidence or testimony of prior crimes, wrongs, or other bad acts.   [DN 184.]   James list several items of purported character evidence that he seeks to exclude:

(1) that he is a "known drug trafficker";

(2) that he "was a suspect . . . [in] any alleged homicides";

6

(3) that he "was recently released from prison" prior to his arrest;

(4) that subsequent to his arrest, he was charged in state court with trafficking in marijuana, failure to wear seat belt, and failure to signal;

(5) that officers found two small bags of marijuana and a digital scale in his possession;

(6) that his "baggy apparel [was] an indication he was trying to conceal a weapon or narcotics";

(7) that the Russell neighborhood where James was arrested is a "high crime area"; and

(8) that after James' arrest, he was first transported to LMPD's homicide unit for questioning regarding unrelated cases.

[DN 184 at 2.]   Additionally, James asks the Court to bar the use of two prior convictions: his 1999 federal conviction for possession of cocaine with intent to distribute and possession of a firearm by a person under indictment for a felony offense, and his 2006 state conviction for trafficking in cocaine.   [*Id.* at 1.]   The United States did not respond to James' motion.   Instead, the government filed a notice stating its intent to introduce three items of character evidence against James: his 1999 federal conviction, a 2006 arrest in Calumet City, Illinois, and a 2008 arrest in Sellersburg, Indiana.   [DN 207 at 2-3.]   In response, James filed a second motion asking the Court to exclude this evidence as well.   [DN 218.]

Rule 404 provides that "[e]vidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance

7

with the character or trait." Fed. R. Evid. 404(a).  Similarly, "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." *Id.* § 404(b)(1).  However, prior bad acts are admissible for other purposes, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *Id.* § 404(b)(2).

The Court agrees with James that the first two items are indeed improper character evidence.  The United States has not signaled its intention to introduce these facts at trial, as is its duty under Rule 404(b)(2).  Accordingly, James' motion is GRANTED as to items 1 and 2 listed above.

Items 3 through 8 involve only the facts surrounding James' stop and arrest, and do not implicate any particular character trait.  As such, those items are not "character evidence," and are not properly excluded by Rule 404.  However, the Court does believe that some of them must nevertheless be excluded because they are irrelevant to James' guilt or innocence and unfairly prejudicial.  James' motion is GRANTED as to items 4, 6, 7, and 8.

During trial, if the United States believes that James has opened the door to the introduction of items 1, 2, 4, 6, 7, or 8 listed above, it must ask the Court permission before attempting to introduce this evidence.

James' motion is DENIED as to items 3 and 5.  During James' suppression hearing, the arresting officers testified that it was James who told them he was recently released from prison on narcotics charges.  The Court believes that James'

8

own statement, as well as the fact that police discovered drug contraband in his possession, are relevant to show the jury the full picture of the circumstances surrounding James' stop and arrest.

James' prior arrests and convictions present a more difficult question. James is charged with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).   [DN 1 at 1.]   To secure a conviction, "the government must prove," among other things, "that the defendant had a previous felony conviction." *United States v. Morrison*, 594 F.3d 543, 544 (6th Cir. 2010) (citation and internal quotation marks omitted).   If the defendant does not stipulate that he is a convicted felon, the prosecution may satisfy this element by introducing a certified copy of his prior conviction.   *See United States v. Johnson*, 803 F.3d 279, 282 (6th Cir. 2015).   In *Johnson*, a defendant refused to stipulate, so the prosecution introduced a certified copy of his prior conviction for "Robbery with a Deadly Weapon."   *Id.*   By allowing the certified copy into evidence, the defendant argued on appeal, the trial court ran afoul of Rule 404(b).   The Sixth Circuit rejected his propensity argument, holding that "Johnson had no legitimate basis for restricting the government's presentation of evidence about an essential element of the crime— a prior conviction—and, as fate would have it, a prior conviction for a gun-related crime."   *Id.* at 283.   Pursuant to *Johnson*, then, if James refuses to stipulate that he has previously been convicted of a felony, the United States can introduce certified copies of his convictions – even though one of those convictions appears to involve a firearm.   *See* [DN 213 at 2.]

9

However, the United States seeks to go further by introducing certain facts underlying his 1999 conviction and two prior arrests.  It asserts that on each occasion, James was found in possession of a firearm, which in turn rebuts his defense that LMPD officers planted the gun on him.   [*Id.* at 4.]

To determine whether prior bad acts evidence is admissible under Rule 404(b), the Court's analysis is threefold.   First, the court "must make a preliminary determination regarding whether there is sufficient evidence that the 'other acts' took place."   *United States v. Lattner*, 385 F.3d 947, 955 (6th Cir. 2004).   Next, the court must determine "whether those 'other acts' are admissible for a proper purpose under Rule 404(b)."   *Id.*   Finally, the court must decide "whether the 'other acts' evidence is more prejudicial than probative."   *Id.* (citing *United States v. Mack*, 258 F.3d 548, 553 (6th Cir. 2001)).

Even assuming the government can provide sufficient evidence that James possessed a firearm on three prior occasions, this evidence must be excluded.   The Sixth Circuit counsels that "in ruling on the admissibility of uncharged misconduct evidence submitted under Rule 404(b), the district court must always determine 'whether one of the factors justifying the admission of "other acts" evidence is material, that is, "in issue," in the case.'"   *United States v. Merriweather*, 78 F.3d 1070, 1074-75 (6th Cir. 1996) (quoting *United States v. Johnson*, 27 F.3d 1186, 1190 (6th Cir. 1994)).   In other words, "the government's purpose in introducing the element must be to prove a fact that the defendant has placed, or conceivably will

10

place, in issue, or a fact that the statutory elements obligate the government to prove." *Id.* at 1076.

It is true that the United States must prove that James "knowingly possessed the firearm specified in the indictment" to prevail at trial. *Morrison*, 594 F.3d at 544 (quoting *United States v. Grubbs*, 506 F.3d 434, 438 (6th Cir. 2007)). But under 18 U.S.C. § 922(g)(1), the government can prove possession in two ways: "(1) by showing that the defendant exercised direct physical control over the weapon (actual possession), or (2) by showing that he exercised dominion or control over the area in which the weapon was found (constructive possession)." *United States v. Caldwell*, 760 F.3d 267, 278 (3d Cir. 2014) (citation omitted). This is an actual possession case, because the prosecution alleges (and James denies) that Detective Browning recovered the Glock handgun from James' right front pocket. "[A] defendant's knowledge is almost never a material issue when the government relies exclusively on a theory of actual possession." *Id.* at 279. Such is the case here. Because James' defense is that he never possessed the gun at all, his knowledge is not in issue, and the prior instances of gun possession go only to his propensity to possess a weapon – the very purpose Rule 404 is designed to prohibit.

The cases cited by the United States are inapposite. In *United States v. Green-Bowman*, 816 F.3d 958, 963-64 (8th Cir. 2016), the court held that evidence of the defendant's prior possession of a firearm was relevant to prove that he knowingly possessed a weapon on a subsequent occasion. But importantly, the trial court introduced his prior act "to prove Green-Bowman knew about the

shotgun next to him in the car and intended to possess it." *Id.* at 963.   Similarly, in *United States v. Davis*, 415 F. App'x 709, 712-13 (6th Cir. 2011), the trial court did not err in admitting the defendant's prior firearm purchase when he argued that he had "no knowledge of the gun" found in his home.   These factual scenarios are readily distinguishable from James', because James does not claim that he lacked knowledge that the Glock pistol was in his waistband.   He claims that the gun never existed in his waistband at all.

A more apt comparison is *Caldwell*, a Third Circuit felon-in-possession case. There, police witnessed the defendant, walking down the street with a friend, remove a handgun from his pants and attempt to hide it behind his compatriot's back.   *Id.* at 271.   At trial, Caldwell claimed that the police were mistaken, and that his friend was actually the one to possess the gun.   *Id.* at 272.   The trial court allowed the government to introduce evidence of Caldwell's two prior convictions for unlawful firearm possession, for the purpose of proving his knowledge and intent. *Id.* at 274.   Reversing Caldwell's conviction, the Third Circuit held that "[b]ecause the Government proceeded solely on a theory of actual possession, . . . Caldwell's knowledge was not at issue." *Id.* at 279.   In so holding, the court noted that "absent unusual circumstances . . . , the knowledge element in a felon-in-possession case will necessarily be satisfied if the jury finds the defendant physically possessed the firearm." *Id.* (citing *United States v. Linares*, 367 F.3d 941, 946-47 (D.C. Cir. 2004)).   Caldwell's counsel even conceded "that if the jury found that Caldwell possessed the gun, then it must also find that his possession was knowing." *Id.*

The court provided numerous hypothetical situations in which Caldwell's knowledge might be in issue, but determined that none of them applied because Caldwell flatly denied that he ever possessed a firearm.   *Id.* at 282-83.   *See also United States v. Lee*, 612 F.3d 170 (3d Cir. 2010) (in felon-in-possession trial, knowledge and intent not relevant when prosecution alleges actual possession); *United States v. Jones*, 484 F.3d 783, 788 (5th Cir. 2007) (same).

Here, James alleges that Browning, Stephenson, and other LMPD officers conspired to manufacture the evidence against him.   As currently presented to the Court, James' defense does not put his knowledge in issue, because the jury could not logically conclude that James actually possessed the Glock handgun in his pants pocket, but did so unknowingly.   The same logic applies to the United States' arguments regarding intent.   Therefore, James' motions [DN 184; DN 218] are GRANTED to the extent he seeks to exclude evidence regarding his possession of firearms on the three occasions detailed by the United States.   Again, if the United States believes that James' defense at trial renders his prior acts relevant, it may ask the Court to revisit its ruling.

## II. Motion for Discovery

Next, James moves the Court to order the United States to turn over three pieces of documentary evidence.   [DN 197.]   The United States has not responded to this motion, and the time for filing a response has passed.

The three items of discovery James requests are:

(1) A copy of the Jefferson County District Court's Order for the release of the Glock 23 .40 caliber handgun SN: DNX903 to former A.T.F. SA Joseph R. Persails . . . on May 21, 2015;

(2) A copy of the Jefferson County Circuit or District Court's Order for the release of Glock 23 firearm DNX903 to Jacob L. Proctor . . . for an unrelated 2014 Wanton Endangerment case;

(3) A copy of the LMD Uniform Citation for the unknown defendant that was arrested with the Glock 23 .40 caliber handgun SN: DNX903 in the unrelated 2014 Wanton Endangerment case that was court order[ed] to be released to a Jacob L. Proctor . . . on or about May 21, 2015, as LMPD chain of custody asserts for the DNX903 firearm.

[*Id.* at 2.] Federal Rule of Criminal Procedure 16 provides that "[u]pon a defendant's request, the government must permit the defendant to inspect and to copy or photography . . . documents . . . within the government's possession, custody, or control and . . . the item is material to preparing the defense." Here, the Court has some reservations regarding the relevance and probative value of the above-listed items. Nevertheless, out of an abundance of caution, in light of the impending trial date, and because the United States has failed to object to providing these documents, the Court will GRANT James' motion. [DN 197.] To the extent the three aforementioned documents exist and are within the government's possession, custody, or control, they must be provided to the defense as soon as is practicable.

14

### III. Motion to Dismiss

Finally, James moves to dismiss the indictment, this time on the basis of government misconduct.[2]   [DN 203.]   The United States has responded, [DN 212], and the time for filing a reply has passed.

As grounds for this motion, James relies upon the defense of outrageous conduct.   That defense applies when "the government's involvement in creating [the defendant's] crime (*i.e.*, the means and degrees of inducement) was so great 'that a criminal prosecution for the [crime] violates the fundamental principles of due process.'"   *United States v. Warwick*, 167 F.3d 965, 974 (6th Cir. 1999) (quoting *United States v. Russell*, 411 U.S. 423, 430 (1973)).   Stated otherwise, "the defendant . . . must establish that the police misconduct rises to the level of a constitutional violation."   *Id.*

The Sixth Circuit addressed the outrageous conduct defense in *United States v. Pipes*, 87 F.3d 840, 841 (6th Cir. 1996), where the defendant was convicted after purchasing a large quantity of marijuana from an undercover agent.   Tennessee law required that law enforcement obtain prior judicial approval before using seized contraband in a reverse sting organization, but in Pipes' case, police failed to obtain that permission.   *Id.*   On appeal, Pipes argued that the officers' violation of the Tennessee statute "was so outrageous as to violate due process."   *Id.*   The court recognized that Supreme Court precedent "could be read to support a theory of due

---

[2] James styles his motion as a "Motion to Dismiss and For Evidentiary Hearing."  [DN 203 at 1.] However, in the body of his motion, James fails to explain why an evidentiary hearing is needed.   Having already held two suppression hearings and repeatedly considered James' arguments regarding the government's chain of custody evidence, the Court does not believe an evidentiary hearing is necessary.

process that protects individuals from outrageous police conduct that shocks the conscience even if that conduct does not deprive individuals of a life, liberty, or property interest protected under the due process clause." *Id.* at 844 (citing *Russell*, 411 U.S. at 431-32; *Rochin v. California*, 342 U.S. 165, 174 (1952)). However, the Sixth Circuit held that Pipes did "not come close to alleging outrageous police conduct that shocks the conscience," and accordingly upheld his conviction. *Id.* at 843.

Here, in attempting to establish a constitutional violation, James relies upon his oft-repeated allegation that the chain of custody for the DNX903 firearm shows Stephenson, Browning, and others planted the gun. The crux of James' allegation is a discrepancy in the government's documentation. The chain of custody appears to show that on May 21, 2015 at approximately 5:25 p.m., the DNX903 firearm was released via court order by "Pool, Doris L." to "Proctor, Jacob L." [DN 190-1 at 2.] Just two minutes later, though, the chain of custody indicates that the weapon was "released to other agency" to "Persails, Joseph Robert." *Id.* James contends that this discrepancy shows that "firearm DNX903 is a weapon planted on James by (CSU) tech Dona J. Stephenson[,] which is evidence that [it] belongs to an unrelated 2014 Wanton Endangerment case as the record reflect[s]." [DN 203 at 4.]

However, the government has provided an email from Abigail Freedman, the LMPD property room supervisor, which explains why the chain of custody seems to indicate the DNX903 handgun was released twice. In that email, Freedman explains that "Doris Pool . . . physically released *another* firearm that same day

16

based on a court order to Jacob Proctor (on a completely unrelated 2014 Wanton Endangerment case)[,] and she got her records mixed up when she went to clear the guns out in our computer system."   [*Id.* (emphasis added).]

The United States has made a showing, which James has not yet rebutted, that this contested entry in the chain of custody is nothing more than a clerical error.   At trial, James is free to present evidence and argue that this conflict in evidence should be resolved by the jury in his favor.   But again, the Court reiterates that James' qualms with the way the DNX903 firearm was handled go to its weight, not its admissibility, and they certainly do not warrant dismissal of James' entire case.   Accordingly, James' motion to dismiss [DN 203] is DENIED.

## IV. Conclusion

For the foregoing reasons, IT IS HEREBY ORDERED:

(1) Defendant's motion in limine to exclude evidence [DN 183] is DENIED;

(2) Defendant's motions to exclude character evidence [DN 184; DN 218] are GRANTED IN PART and DENIED IN PART;

(3) Defendant's motion in limine to exclude evidence and testimony [DN 185] is DENIED;

(4) Defendant's motion for discovery [DN 197] is GRANTED;

(5) Defendant's motion to dismiss the indictment [DN 203] is DENIED; and

(6) Defendant's motions asking the Court to rule on his motion to dismiss [DN 216; DN 219] are DENIED AS MOOT.